ROBERT A. HARTRICK *et al.* Plaintiffs in Error, *vs.* KATE
HARTRICK *et al.* Defendants in Error.

*Opinion filed April 20, 1916.*

1. WILLS—*when files of proceeding to have testator declared in-
sane are admissible.* In a proceeding to contest a will, where un-
due influence by two of the testator's sons is one of the issues and
the will itself gives as a reason for preferring such two sons that
they had taken the testator's part when the other children sought
to have him declared insane, the proponents are entitled to intro-
duce the files of such proceeding in evidence in order to refute the
charge of undue influence and sustain the reasons given by the tes-
tator in the will for disposing of his property as he did.

2. SAME—*when child of testator is not a competent witness.* In
a proceeding by some of the children of a testator to contest a will
leaving the greater part of the testator's property to the children
who are defendants, a child of the testator who is not called to tes-
tify against her interest is not a competent witness; and in deter-
mining whether the witness will receive more if the will were set
aside than if it were sustained, the court is not bound to accept the
lowest valuation put upon the property by a witness who placed the
valuation of the farm land at from $200 to $225 per acre.

3. SAME—*what statement in instruction does not exclude con-
sideration of provisions of will.* A statement in an instruction in a
will contest case to the effect that the only questions for the jury
are whether the writing offered is the will of the deceased and
whether he was, at the time of executing the same, of sound mind,
does not exclude the provisions of the will from the consideration
of the jury.

4. SAME—*when instruction as to degree of mental capacity re-
quired is not erroneous.* In the absence of any evidence tending to
show that the testator was insane with reference to the subjects
connected with the testamentary disposition of his property and
the natural objects of his bounty, it is not error to omit reference
to such matter in an instruction stating that one who has sufficient
mental capacity to transact the ordinary business affairs of life is
competent to make a will.

5. SAME—*what statements in instructions in will contest are not
erroneous.* Statements in instructions in a will contest case to the
effect that unsoundness of mind is a disease of the brain, and that
the mere fact that a person is of great age does not create any
presumption against his mental condition, are not erroneous.

WRIT OF ERROR to the Circuit Court of Champaign county; the Hon. JOHN McNUTT, Judge, presiding.

C. C. LEFORGEE, L. B. SAFFER, CHARLES IUNGERICH, THOMAS W. SAMUELS, and S. L. POGUE, for plaintiffs in error.

DOBBINS & DOBBINS, and HERRICK & HERRICK, for defendants in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

This writ of error was sued out to review the decree of the circuit court of Champaign county in a suit to contest a will, finding the instrument purporting to be the last will and testament of Henry Hartrick, deceased, to be his will and dismissing the bill.

Henry Hartrick executed the instrument in question on August 1, 1911, shortly after the death of his wife. He died in 1913, at the age of about eighty-four years, and the instrument was duly admitted to probate as his will. He left surviving him nine children,—five sons and four daughters,—seven of whom are plaintiffs in error here, and the remaining two, Julius Hartrick and Guy Hartrick, are defendants in error. A few days before he executed his will he conveyed 120 acres of land in Champaign county to his son Julius and 120 acres to his son Guy, reserving a life estate in all of the said land. At that time he owned 325 acres of farm land, and a homestead in the city of Urbana. The record does not disclose how much personal property he had or whether there was any indebtedness. The farm land was shown to be worth from $200 to $225 per acre and the city property to be worth $10,000. Shortly prior to the death of Mrs. Hartrick, in 1911, George M. Hartrick and Minnie E. Black, two of the plaintiffs in error, children of Henry Hartrick, filed their petition in the county court of Champaign county, alleging that Henry Hartrick was in-

sane and praying that the question of his alleged insanity be inquired into. The names of six of the plaintiffs in error were, among others, attached to the petition as witnesses by whom the insanity of Henry Hartrick could be proven. Emma Webster, the remaining plaintiff in error, a daughter, resided in the State of California and took no active part in these proceedings. The county court appointed a commission, consisting of Dr. James M. Bartholow and Dr. W. F. Burres, to examine Henry Hartrick. The examination was made but no formal report was made to the court, as Hartrick employed an attorney and an order was then entered that the cause be tried by a jury. A jury was empaneled and testimony heard, but the cause was continued from time to time during the last illness of Mrs. Hartrick and after her death was dismissed. During these proceedings Julius Hartrick and Guy Hartrick espoused the cause of their father and rendered him such assistance as they could in defending against the charge of insanity. After the proceedings had been dismissed Henry Hartrick made the will in question. Before executing the instrument he employed a number of physicians to examine him with reference to his mental condition and to advise him whether he was of sound or unsound mind. While the proceedings were pending in the county court on the petition to have Hartrick adjudged insane, Dr. Frank P. Norbury, a specialist in mental and nervous diseases who at that time was superintendent of the State Hospital for the Insane at Kankakee, was employed to examine Hartrick. After these proceedings had been dismissed, and before the will was drawn and executed, Hartrick went, unaccompanied, from his home in Urbana to Kankakee, a distance of seventy miles, to submit to a further examination by Dr. Norbury to determine whether he had sufficient mental capacity to transact his business and to make a will disposing of his property. He was examined by Dr. Norbury at that time, and also by Dr. Harold E. Singer, a specialist in mental

and nervous diseases, who was also connected with the State Hospital for the Insane at Kankakee.

On the trial thirty-one non-expert witnesses and eight physicians testified on behalf of the proponents that Henry Hartrick, at the time he executed the instrument in question, and at all times, was of sound mind and memory. The non-expert witnesses were from all walks of life. Among them were men and women who were intimately acquainted with the testator and many of them had known him for years. Each physician who testified had had an opportunity to personally examine the testator about the time he made the will with a view of determining his mental condition, and one of them had been the physician who had attended him for at least two years prior to the time of his death.

For many years the testator had been afflicted with a cancer. To stop the ravages of the disease surgery was resorted to, and the testator's right eye and practically the whole of his right cheek had been removed prior to the time the will was executed. It is the contention of contestants that the cancerous growth had invaded and affected the brain tissue, but the record is devoid of proof of any such condition.

The two physicians who were appointed by the county court as a commission to examine the testator at the time the insanity inquiry was pending in the county court testified that at that time they found him to be of unsound mind. One of these physicians testified that he met Hartrick some time afterwards, when he appeared perfectly sane. Another physician who examined him at the same time also testified that at that time he was of unsound mind. Three non-expert witnesses testified that the testator was of unsound mind, one of these being a near neighbor in the city of Urbana, one a sister of Mrs. Hartrick, and one a minister who for five years had been the pastor of the church in Urbana of which the testator had been a member.

The testimony is voluminous and it will serve no good purpose to review it in detail. It is sufficient to say that the testimony on behalf of proponents that the testator was of sound mind and memory is so conclusive that there can be no question of the·correctness of the verdict of the jury so far as the weight of the evidence is concerned.

Proponents offered in evidence the petition of George M. Hartrick and Minnie E. Black, filed in the county court, to have their father adjudged' insane, and the list of witnesses submitted by the petitioners and filed in the county court, to prove the averments of their petition. It is contended that the admission of these files of the county court was improper. The bill charged lack of testamentary capacity in the testator and also that the execution of the will had been procured by the undue influence of Julius Hartrick and Guy Hartrick. While the issue of undue influence was withdrawn from the jury, it was not until the close of the whole case and after this evidence had been offered and admitted. As a preface to his will the testator recited the fact that he had formerly made a will, reciting the provisions of the same, to which he had added two codicils. He then recited the fact that his son George and his daughter Minnie had filed the aforesaid petition in the county court of Champaign county charging that he was insane; that during the pendency of that proceeding his sons Julius and Guy were the only ones of his children who gave him any comfort or assistance; that all the other children, with the exception of his daughter Emma Webster, who resided in California, assisted in the prosecution of the petition. He then stated that for that reason he desired to make such a disposition of his property as would give a preference to his sons Julius and Guy. By his will he then bequeathed to his three sons other than Julius and Guy the sum of $2000 each and made the same a charge upon his real estate. To his daughter Mrs. Webster he bequeathed the sum of $3000, and to each of his other three daughters he bequeathed the sum of

$1000, making all these sums a charge upon the real estate. He then devised the remainder of his farm lands to his sons Julius and Guy and his homestead in the city of Urbana to Guy. The personal property was bequeathed to Julius and Guy, and they were made the executors of the will. The files of the county court in the matter of the insanity inquest were properly admitted in evidence to refute the charge of undue influence and also to sustain the reasons the testator assigned in the will for making this disposition of his property.

Emma Webster was offered as a witness on the part of the contestants, and upon the objection of proponents the court refused to permit her to testify. Mrs. Webster, being one of the children of the testator and not being called to testify against her interest, was not a competent witness. While the record does not disclose the value of the personal property, it does show that the real estate devised consisted of 84 acres of farm land, worth from $200 to $225 per acre, and the homestead property in the city of Urbana, worth at least $10,000. While, at the lowest valuation placed upon the farm land, Mrs. Webster would receive about the same under the will as she would if this were intestate property, we are not bound by the lowest valuation placed upon this land for the purpose of determining this question. But one witness testified to the value of this property, and he placed the value of the farm land at from $200 to $225 per acre, the plain inference being that the real value was somewhere between those two figures. The court properly refused to permit Mrs. Webster to testify.

The contestants sought to impeach Dr. Norbury by asking him, upon cross-examination, if he had not received a communication from an attorney in Newton, Iowa, describing a party who had been afflicted with almost the same physical ailments that the testator had been afflicted with, and stating that one of the children of this party got possession of him and thereafter he made a will by which this

child acquired practically the entire estate, and if he did not, in response to that letter, offer his services at the rate of $100 per day to show circumstances by which the will could be set aside. The court, upon objection of proponents, would not permit the witness to answer the question. It is insisted that the court erred in not permitting the witness to be thus impeached. Defendants in error contend that the circumstances as detailed in the letter to the witness were materially different from those developed on the trial in this case and for that reason the objection was properly sustained. There is no proof in this record that the sons Julius and Guy got possession of their father or that they exercised any control over him. In that respect, at least, the case as stated by the Iowa attorney to Dr. Norbury differed from the facts adduced on this trial. We do not deem it necessary to analyze this proposition carefully, as without the testimony of Dr. Norbury the sanity of the testator was abundantly established, and the jury could have come to no other conclusion than that he was of sound mind at the time he made his will.

The action of the court in giving and refusing various instructions is assigned as error. It is complained that the fifth given instruction on the part of the proponents is bad, for the reason that it assumes the execution of the will, is silent as to whether it was properly attested, and excludes from the jury, as bearing upon the mental capacity of the testator, all consideration of the reasonableness or unreasonableness, justice or injustice, propriety or impropriety, of the will. It is nowhere denied that Henry Hartrick executed the will, and it is abundantly proven that it was properly attested, and no contest is made on that point. In other instructions given on behalf of contestants the jury were told that, as bearing upon the mental capacity of the testator, they might consider the provisions of the will. That part of the fifth instruction given which stated that the only question for the jury to try was, Is the writing offered the

will of the deceased, and was he, at the time of executing the same, of sound mind?—does not exclude from the consideration of the jury the provisions of the will.

By the eighth instruction given on behalf of the proponents the court correctly told the jury that the construction of the two deeds introduced in evidence, being the deeds made to the sons Julius and Guy prior to the execution of the will, was for the court and not for the jury, and that these deeds do not convey the whole interest of Henry Hartrick in the lands described but reserved to him a life estate.

It was not error by the ninth instruction to refer to unsoundness of the mind as a disease of the brain.

The objection that the tenth given instruction does not specify with definiteness the time when the testator must be of sound mind and memory, and that the jury might from this instruction consider it enough if the testator was shown to be of sound mind and memory at any time, is not tenable. This instruction is capable of no other construction than that it referred to the time of the making of the will.

By the fourteenth given instruction the jury were told that every person who has sufficient mental capacity to transact the ordinary business affairs of life is competent to make a will, and it is insisted that this was error, for the reason that the testator might have had sufficient capacity to attend to the ordinary business affairs of life and yet at the same time be without sufficient capacity to make a will if he was insane with reference to the subjects connected with the testamentary disposition of his property and the natural objects of his bounty. There is not a scintilla of evidence in this record that the testator was insane in reference to the property which he possessed or entertained insane delusions in reference to the objects of his bounty. It is true that he was displeased with the attitude of six of his children at the time he was charged in the county court

with being insane, but there is no proof whatever that he entertained any delusions in this respect, and it could not seriously be contended that his displeasure at this action on the part of his children was unreasonable or unnatural.

It is complained that the eighteenth given instruction is erroneous, for the reason that it ignores the rule that in the first instance the burden of proof is on the proponents to show that the testator was mentally competent to make a will. While this is true and the instruction does not recognize this rule, it was warranted because of the method pursued in the presentation of the evidence on the trial of this cause. The proponents put in their whole case in the first instance, and under this situation it was not necessary that this instruction should state the rule mentioned.

The nineteenth given instruction does not tell the jury to absolutely ignore the age of the testator in arriving at their conclusion as to his mental condition, but simply states that the mere fact that a person is of great age creates no presumption against his mental condition.

What we have already said in reference to the fifth given instruction disposes of the objection made to the twenty-fifth instruction given.

The instructions as given correctly and fully stated the law to the jury. A large number of instructions was given on each side. Complaint is made that the court erred in refusing to give five of the instructions offered on the part of the contestants. We have carefully examined these instructions and find no error in their refusal. The competent parts of these instructions were given in other instructions in the series.

The decree of the circuit court is affirmed.

*Decree affirmed.*